UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ELIZABETH MONTANEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:06-cv-1563-DFH-TAB |
| | ) | |
| JULIE SMITH, Superintendent, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Elizabeth Montanez ("Montanez") alleges in this civil rights action that defendants Julie Smith, Walter Martin ("Martin"), and Fran Smith[1] were deliberately indifferent to her health and safety on October 31, 2004, at the Rockville Correctional Facility ("RCF") when she was assaulted by another offender, Paula Cooper ("Cooper").[2] On October 25, 2006, when Montanez filed her complaint, she was represented by counsel, but since October 31, 2007, she has been proceeding *pro se*.

Defendants Julie Smith, Martin and Fran Smith seek resolution of the claims against them through summary judgment. For the reasons explained in this Entry, the defendants' motion for summary judgment must be **granted**.

**I. Background**

A motion for summary judgment must be granted pursuant to Rule 56(c) of the *Federal Rules of Civil Procedure* "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Factual disputes are 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

---

[1]Defendant J. David Donahue was dismissed on February 27, 2007 (dkt 12), by stipulation of the parties.

[2]Paula Cooper is also named as a defendant in the complaint, but service has never been perfected on her, nor has she appeared in the action. The only claim asserted against Cooper is a state law claim of battery. Because all of the federal claims are resolved through this Entry, and because Cooper has never been served with process, any state law claim against Cooper is **dismissed without prejudice**. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolv[e] them on the merits.")).

Because Montanez is now proceeding without counsel, the notice required by *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), was issued. Through this notice, Montanez was notified of the nature of the defendants' motion, of the proper manner in which to respond, and of the possible consequences of failing to respond. Montanez responded with a response brief and evidentiary materials.

## II. Discussion

### A.   Findings of Undisputed Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record that comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the defendants' motion.

RCF is a women's medium security prison located in Rockville, Indiana. On October 31, 2004, Montanez was an inmate at RCF. On October 31, 2004, defendant Martin was the Superintendent of the RCF and defendant Julie Smith was the Assistant Superintendent of the RCF. Defendant Fran Smith was a Unit Manager at the RCF. Fran Smith was responsible for the management of dormitory 4, dormitory 5, and the segregation unit and had never worked in classification.

In 2004, there were four (4) security levels within the Indiana Department of Correction ("DOC"). The higher the number, the greater the security. Level 1 was equivalent to minimum security. Level 4 was maximum security. Level 2 was low-medium and Level 3 was high-medium. In 2004 at the RCF, female offenders with security classification levels 1-3 were housed together, in conformance with DOC classification policy.

Montanez was a security Level 2 on October 31, 2004. From July 2002 to October 31, 2004, Montanez lived in dormitory 4.

Cooper was an inmate at RCF on October 31, 2004. Cooper was transferred to the RCF from the Indiana Women's Prison ("IWP") in Indianapolis, Indiana on August 5, 2002. The superintendent, assistant superintendent, and unit team manager of a receiving facility have no authority to approve or reject the proposed transfer of an offender. Cooper was assigned to dormitory 4 at the RCF. Cooper was classified a security Level 3 on October 31, 2004. Cooper is serving a sentence for murder.

Cooper received a conduct report for battery on a correctional officer at the IWP on June 28, 1995. From Cooper's transfer to the RCF in August 2002 until October 31, 2004, she received no disciplinary reports or actions against her for battery on an offender or prison staff. For a period of nine (9) years, Cooper's conduct history was clear of disciplinary reports and/or actions for battery or other violent conduct. On October 31, 2004, Cooper received a conduct report for battery on offender Montanez.

From the time Montanez came to the RCF in 2002 until October 31, 2004, Montanez and Cooper lived in the same dormitory, ate together and had recreation time together. Montanez and Cooper shared the same bathroom, the same laundry room, the same quiet room, the same hair room and the same dayroom.

Prior to October 31, 2004, Cooper and Montanez were not on bad terms, had not had negative experiences with each other and never had a problem with the other. On October 31, 2004, a Sunday, Cooper jumped Montanez in the dayroom of the dormitory and kicked and hit her, causing injury.

On October 31, 2004, but before the incident with Cooper occurred, Montanez heard Cooper using racial slurs. Montanez reported the use of racial slurs and her perception of what was causing tension in the dayroom to a Sgt. Roberts. Sgt. Roberts made an announcement that if he heard anyone using a racial slur he would write them up.

On October 31, 2004, but before the incident with Montanez occurred, Cooper asked Montanez whether she had written a statement against her, whether she was "the police." Montanez responded, "no." Cooper said, "well, I'm going to hit you in your mouth." Montanez responded, "all right" and just sat there. Montanez believed Cooper was referring to something that happened a couple of days prior to October 31, 2004, when another offender, Melissa Reyes ("Reyes"), told Montanez that she had seen Cooper and her friends steal some tennis shoes and put them in the trash. The shoes belonged to offender Renee Martin.

Montanez believed Cooper had observed her and Reyes talking and that it made Cooper nervous. Montanez did not tell anyone she thought Cooper was nervous about Reyes talking to Montanez a couple of days before October 31, 2004. Montanez told Reyes' friend, Lisa, that if Reyes was scared she needed to go tell an officer.

Following the altercation with Cooper, Montanez was taken to the infirmary and given medical attention consisting of Motrin. Montanez had an x-ray taken on November 1, 2004, and the x-ray report stated that there was no evidence of a fracture or other significant bone or joint abnormality in her right rib cage and her right hand. Montanez was released from the infirmary on the following day, November 1, 2004, and transferred to dormitory 1.

At no time prior to the altercation with Cooper did Montanez communicate with Martin about any problems she may have been having with Cooper or Cooper's friends or about the stolen tennis shoes. At no time prior to the altercation with Cooper did Montanez communicate with Julie Smith or Fran Smith about any problems she may have been having with Cooper or Cooper's friends or about the stolen tennis shoes. At no time prior to the altercation with Cooper did Montanez communicate to any staff member the conversation she had with Reyes about the stolen tennis shoes.

Martin did not receive any communications nor did he observe anything that would have led him to believe that Montanez faced a particular risk of substantial harm. Martin did not actually know and could not have known that Montanez faced a particular risk of substantial harm.

Julie Smith did not receive any communications nor did she observe anything that would have led her to believe that Montanez faced a particular risk of substantial harm. Julie Smith did not actually know and could not have known that Montanez faced a particular risk of substantial harm.

Fran Smith was unaware of any problems between Montanez and Cooper before the incident on October 31, 2004 and had no knowledge, nor did he observe any signs, that there was going to be a problem.

### B. Conclusions of Law

Montanez alleges that the defendants violated her rights pursuant to the Fourteenth and Eighth Amendments to the Constitution.[3] She alleges in her complaint that as a direct result of the defendants' "policies permitting violent inmates to reside and circulate within the general prison population" Montanez suffered severe and permanent injuries. She sues the defendants in their individual capacities "for implementing the policies that directly led to the physical attack on the Plaintiff on October 31, 2004." In addition, she alleges that the defendants were deliberately indifferent to her physical safety and medical needs. She also alleges in support of her constitutional claims that the defendants negligently failed to provide adequate and timely medical treatment.

The Eighth Amendment imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted). This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation omitted). In this context, a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. "Deliberate indifference" requires a showing of the official's subjective awareness of the risk. *Id.* at 829. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. *See also Borello v. Allison*, 446 F.3d 742, 749 (7th Cir. 2006).

The defendants argue that Montanez has not presented evidence sufficient to sustain her failure to protect claim. Montanez must come forward with evidence sufficient to create a genuine issue of fact that each defendant had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (internal quotation omitted). It is undisputed that Montanez did not at any time report to Martin, Julie Smith or Fran Smith any risk of harm posed by Cooper. It is undisputed that the defendants did not otherwise come to know or suspect that Montanez faced a substantial risk of serious harm on October 31, 2004. In sum, there is no evidence of actual knowledge on the part of the defendants of tension between offenders in the dayroom, much less a substantial risk of harm, on October 31, 2004.

Montanez testified in her deposition that during the morning of the assault, prior to the assault, she told Sgt. Roberts that there was tension between Cooper and other

---

[3]Montanez does not allege a factual basis for a Fourteenth Amendment claim. Without a factual basis, this claim cannot be maintained. Here, the Eighth Amendment encompasses the allegations relating to the plaintiff's health, safety and medical care. Under these circumstances, there is no occasion to invoke the important but limited protection of due process under the Fourteenth Amendment. *See Albright v. Oliver,* 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation omitted). The defendants are entitled to summary judgment as to any Fourteenth Amendment claim.

4

offenders in the dayroom and that Cooper had made racial and threatening remarks. She argues that Sgt. Roberts had actual knowledge of impending harm. She contends that at any time that morning, Sgt. Roberts or another officer, Officer Blacketer could have moved Montanez or Cooper to avoid any confrontation. Neither Sgt. Roberts nor Officer Blacketer, however, is a defendant in this case.[4] Their alleged knowledge was never conveyed to the defendants and therefore it cannot be used to impose liability on the defendants. Accordingly, because there has been no showing of subjective awareness, on the part of the defendants, of the risk of harm to Montanez, the defendants are entitled to summary judgment.

For the sake of completeness, the court acknowledges that Montanez alleges in her complaint that the defendants placed her in harm's way by virtue of policies which permit offenders convicted of violent crimes to be housed with offenders in the general population. Montanez has not presented any evidence suggesting that any DOC classification or housing assignment policies themselves placed her in unreasonably dangerous circumstances. Aside from any general challenge to DOC policy, in this case the record is undisputed that Montanez and Cooper had lived in the same dormitory for two (2) years without incident. Cooper had not received any disciplinary reports for violent conduct for nine (9) years prior to her attack of Montanez in October 2004. Montanez testified that prior to this incident, she had had no trouble with Cooper. In addition, she does not allege having had problems with any other offender in a different security level. Accordingly, no evidence has been presented to support her initial theory of liability relative to DOC policy, and the defendants are entitled to summary judgment as a matter of law.[5]

### III. Conclusion

"After one party has filed a motion for summary judgment, 'the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues [on] which the non-movant bears the burden of proof at trial.'" *Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.,* 102 F.3d 914, 916 (7th Cir. 1996) (quoting *Walker v. Shansky,* 28 F.3d 666, 670-71 (7th Cir. 1994)). The non-movant fails to demonstrate a genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In this case, Montanez has failed to come forward with evidence creating a disputed question of material fact as to whether the defendants

---

[4]The plaintiff's motion to amend the complaint filed on November 8, 2007 (dkt 34) was denied (dkt 36). As explained in that ruling, to the extent the plaintiff sought to add Sgt. Roberts as a defendant, such amendment would have been futile because a claim against Sgt. Roberts would be time-barred. The plaintiff did not mention Officer Blacketer in her motion to amend nor did she name him as a defendant.

[5]Although Montanez alleged in her complaint that the defendants negligently failed to provide adequate and timely medical care, this does not state a federal constitutional claim. *See Borello v. Allison*, 446 F.3d at 749 ("[M]ere negligence or even gross negligence does not constitute deliberate indifference.") (internal quotation omitted). Moreover, there is no evidence that any defendant participated in or was responsible for the provision of medical care. To be liable for damages, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000); *see also Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (to be liable for the deprivation of a constitutional right, an individual must personally participate in the deprivation or must direct the conduct or have knowledge of and consent to the conduct).

were deliberately indifferent to her safety. Accordingly, the defendants' motion for summary judgment must be **granted**.

The final pretrial conference set on August 8, 2008, and the jury trial set on August 18, 2008, are **vacated.**

Judgment consistent with this Entry and with the Entry of February 27, 2007, shall now issue.

So ordered.

_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date: 5/15/2008